**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


KIMBERLY DAWN VANDEWALLE
and DOROTHY PENTON,

      Plaintiff,

v.                              CASE NO.  4:14cv679-RH/CAS
LEON COUNTY, FLORIDA, and
ANDREW SELTZ,

      Defendants.

_____/


**<u>ORDER DENYING A STAY</u>**


Trial in this case is imminent.  This order addresses a motion to stay—in

effect, a motion to continue the trial.  An individual defendant filed the motion just

two weeks before trial.  The asserted basis for a stay is an appeal challenging the

denial of the individual defendant's last-minute summary-judgment motion—a

motion that made a cursory invocation of qualified immunity but not on grounds

that would support an interlocutory appeal.  This order denies a stay.

# I

The Leon County Animal Control Division has a director and a staff that includes animal control officers. Two animal control officers—Kimberly Dawn Vandewalle and Dorothy Penton—brought this lawsuit asserting claims under the Florida public whistleblower statute and under 42 U.S.C. § 1983. The § 1983 claims asserted First Amendment violations. The plaintiffs named the County as the sole defendant on the whistleblower claim and named as defendants on the § 1983 claims the County and two individuals—Andrew Seltz and Chad Abrams. Each individual defendant was the director of the Animal Control Division for part of the period at issue. Mr. Seltz held the position first, followed by Mr. Abrams.

The plaintiffs asserted that they told state prosecutors that Mr. Seltz was on a campaign of false charges against a citizen and had committed perjury in support of one such charge. Ms. VanDeWalle asserted that she suffered two adverse employment actions in retaliation for this protected speech: first, denial of her application for a position in the County's Veterans Services Division (after the application had initially been approved); and second, termination. Ms. Penton asserted that she suffered one adverse employment action: termination.

II

The individual defendants did not move to dismiss based on qualified immunity. On March 10, 2015, early in the case, a case-management order set the trial for the two-week period beginning on October 19, 2015. The case was eventually stacked at the beginning of the second week of the trial period—that is, on October 26, 2015.

The March 10 order said summary-judgment motions should be filed as soon as possible and should not await the completion of all discovery. ECF No. 17 at ¶7. The order set May 19, 2015, as the deadline for summary-judgment motions based on qualified immunity. *Id.*

The May 19 deadline was an effort to comply with the accepted principle that qualified-immunity issues should be resolved sooner, not later. Any well-founded motion—for example, any motion asserting the governing law was not clearly established—could easily have been filed by that date.

On May 19, the deadline for any summary-judgment motion based on qualified immunity, the defendants filed a consented motion to extend the deadline by more than three months, to August 28. On May 20, an order was entered granting the consented motion, but the order made clear to the defendants that if

they waited until the last minute, lost, and sought a stay, the stay was not likely to

be granted.  The May 20 order said:

> The scheduling and mediation order set an earlier deadline for summary-judgment motions based on qualified immunity than for other summary-judgment motions.  The reason was this.  An order denying summary judgment based on qualified immunity is sometimes immediately appealable.  A defendant who loses such a motion and appeals often asks to stay further proceedings in the district court.  If a stay is entered shortly before a scheduled trial, substantial resources are wasted.  This serves the interests of nobody, including the public official who supposedly benefits from the ability to take an immediate appeal.

> The defendants have filed a consented motion to extend the deadline to move for summary judgment based on qualified immunity.  This order grants the motion.  *But the defendants should note: the delay in filing any such motion will be considered if the motion is denied and a defendant moves to stay further proceedings pending an appeal.  If the case is ready for trial, or nearly so, a stay is unlikely.*

Order of May 20, 2015, ECF No. 22, at 1–2 (emphasis added).

Despite this clear advice to the defendants to file any summary-judgment

motion early and not to expect a stay if they waited until the last minute, they

waited until 4:46 p.m. on the very last day, August 28, to move for summary

judgment.  Briefing on the motion was complete when the defendants filed their

reply memorandum in support of the motion on September 25.  I entered a ruling

within a week—on October 2.  The defendants waited 10 more days, until after

5:00 p.m. on October 12, to move for a stay.

# III

The summary-judgment motion was submitted jointly by the County and the individual defendants. The motion's principal assertion was that the plaintiffs' claims failed on the merits. Thus the defendants said the plaintiffs had failed to show a First Amendment violation at all.

The motion also invoked qualified immunity, but only in cursory fashion. After setting out well established general principles governing qualified immunity, the memorandum in support of the motion said the burden was on the plaintiffs to overcome the qualified-immunity defense. The memorandum continued:

> The Plaintiffs cannot accomplish this. There is no constitutional violation because the speech at issue is not protected. If the speech is protected, then the Plaintiffs' rights were not clearly established. In fact, Ms. VanDeWalle has no knowledge if Director Seltz was even aware of the perjury allegations. (VanDeWalle Depo, 124:11—17.) She also has no knowledge as to whether Chad Abrams knew about her allegations of perjury against Director Seltz. (VanDeWalle Depo. 155:23—156:1.) Therefore, Defendants Seltz and Abrams cannot have thought that their conduct would violate federal law and they are entitled to qualified immunity.

ECF No. 34 at 25. This was the entire discussion of whether these defendants were entitled to qualified immunity.

The defendants' argument as submitted at that time can fairly be summarized as follows. The plaintiffs' statements about perjury were not

protected by the First Amendment at all. And the record does not show the defendants even knew about the statements.

## IV

After a lengthy hearing, I granted the summary-judgment motion in part. I entered summary judgment against one plaintiff, Ms. Penton, on all of her claims. I entered summary judgment for one individual defendant, Mr. Abrams, on all the claims against him. Those rulings left pending the claims of the other plaintiff, Ms. VanDeWalle, against the County and the other individual defendant, Mr. Seltz. I granted summary judgment for Mr. Seltz on Ms. VanDeWalle's termination claim. This left for trial Ms. VanDeWalle's termination and Veterans Services claims against the County and Ms. VanDeWalle's Veterans Services claim against Mr. Seltz.

The reason for denial was this. On this record, a jury could find as a fact that Mr. Seltz first delayed and then blocked the Veterans Services transfer on pretextual grounds. A jury could find an actual reason for blocking the transfer was that Ms. VanDeWalle had told Assistant State Attorneys that Mr. Seltz committed perjury and brought charges known to be false against a citizen Mr. Seltz was out to get. A jury could find that Mr. Seltz was a person whose edicts or acts could fairly be said to represent official policy, or that his decisions were

rubber stamped by such a person, allowing the Veterans Services claim to go forward against the County. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Of less relevance here, the termination claim could go forward against the County, but not against Mr. Seltz individually, because he was gone by the time of the termination and had at least qualified immunity from that claim.

V

The summary-judgment ruling was explained on the record but not set out at length, because trial is imminent and the actual facts—not just those taken as true for summary-judgment purposes—will soon be known. The trial is likely to resolve the case once and for all; an appeal may not be necessary once a jury decides the facts.

Now, though, Mr. Seltz has moved for a stay and, upon entry of this order denying a stay, may take the stay issue to the Eleventh Circuit. Because Mr. Seltz has left very little time for the Circuit to fully evaluate the record, this order sets out the basis for the summary-judgment ruling at greater length.

On November 22, 2013, Ms. VanDeWalle applied for the position of counselor in the County's Veterans Services Division. As a veteran, Ms. VanDeWalle had an interest in the position. On December 13, Ms. VanDeWalle interviewed for the position. Near the end of December, Ms. VanDeWalle was

selected.  Because this was a County position, Ms. VanDeWalle could make the move only with the approval of her current supervisor, Mr. Seltz, and his supervisor, Alan Rosenzweig.

While this was going on, Judy Dubois, a citizen who actively attempted to save abandoned animals, continued her long-running, frequent interactions with the County's animal control officers.  Mr. Seltz disapproved of Ms. Dubois's actions. He ordered Ms. VanDeWalle to issue a citation without a basis for doing so.  On January 8, 2014, Ms. VanDeWalle appeared in court and truthfully told the judge that she issued the citation because she was ordered to do it and that the charges were unfounded.  The judge dismissed the charges.  Another case involving Ms. Dubois also came on for hearing that day.  The animal control officer involved in that case, Morgan Strauss-Harrison, gave testimony that contradicted Mr. Seltz's testimony.  So in both cases, officers contradicted Mr. Seltz's position.  A jury could find Mr. Seltz deliberately pursued false charges against Ms. Dubois.

Later on the same day, January 8, Mr. Seltz sent Ms. VanDeWalle an email asserting that she had failed to complete reports or to do them properly.  A jury could find that the email was a pretextual effort to set up later adverse action against Ms. VanDeWalle.

On January 22, Mr. Rosenzweig told Ms. VanDeWalle that Mr. Seltz had reported on the pending transfer to Veterans Services and on his bad relationship with Ms. VanDeWalle. Mr. Rosenzweig told Ms. VanDeWalle he was not sure he would sign off on the transfer. But he apparently relented. On January 28, Ms. VanDeWalle learned that the Veterans Services transfer had been approved. Her start date was set as February 24.

Meanwhile, on February 13, Ms. VanDeWalle told an Assistant State Attorney that Mr. Seltz had committed perjury in the January 8 hearing in Ms. Strauss-Harrison's case. On February 19, just six days later, Ms. VanDeWalle learned that her transfer to Veterans Services had been delayed. The delay occurred because Mr. Seltz said the Animal Control Division was short staffed, even though the staff was the same on February 19 as on January 28, when the transfer was approved and the February 24 effective date was set.

The transfer continued to be delayed. On April 8, Ms. VanDeWalle and Ms. Strauss-Harrison met with the State Attorney, reporting that Mr. Seltz was causing unfounded citations to be issued to Ms. Dubois and had committed perjury in the January 8 hearing. On April 9, Ms. VanDeWalle and Ms. Strauss-Harrison told the County Administrator about the April 8 meeting. They also told him that Mr. Seltz had failed to follow up on animal welfare calls as he had undertaken to do

personally, resulting in animal deaths. These allegations were reported down through the chain of command to Mr. Seltz.

Ms. VanDeWalle was out of the office for about a month beginning April 10 because of the death of her son. When she returned, Mr. Seltz advised her that the transfer to Veterans Services had been canceled. A jury could find that the stated reason—lack of productivity—was pretextual.

VI

If the case is stayed, Mr. Seltz will remain a party to this litigation for many months—probably more than a year—as the appeal goes forward. If the case is not stayed, the case may well be over within a week from today. Ironically, the only basis for an interlocutory appeal is to allow Mr. Seltz to be free of the litigation sooner—a goal almost sure to be frustrated, not furthered, by an immediate appeal. Had Mr. Seltz really wanted the case to be over sooner, he could have moved for summary judgment months ago—before the original deadline in May.

Moreover, an immediate appeal is available only to review a legal issue. An immediate appeal is not available just to challenge a district court's determination of the facts (that is, of the facts supported by the record when disputes are resolved in favor of the nonmoving party). *See, e.g.*, *Johnson v. Jones*, 515 U.S. 304 (1995); *Koch v. Rugg*, 221 F.3d 1283, 1296 (11th Cir. 2000).

A party ought not be able to assert on appeal an argument not properly briefed and argued in the district court—just as a party cannot assert at oral argument in the Eleventh Circuit a position not briefed in a meaningful way.  Mr. Seltz did not brief in this court in a meaningful way any issue on which he can take an immediate appeal.

To be sure, in the discussion of general principles governing qualified immunity, the defendants' memorandum mentioned the principle that qualified immunity applies unless a defendant violates clearly established law.  But the memorandum did not refer to that requirement when applying the general principles to this case.  And the memorandum did not even cite the Eleventh Circuit's recent qualified-immunity decision addressing First Amendment cases of this kind.  *See Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014) ("In the context of a First Amendment retaliation claim, [the Eleventh Circuit] recognized that a defendant 'will only rarely be on notice that his actions are unlawful' because applying the *Pickering* balancing 'involves legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules.' " (quoting *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000))).

In attempting now to take an interlocutory appeal, the defendants apparently intend to pursue on appeal an argument not included in their summary-judgment memorandum.

## VII

The Supreme Court and Eleventh Circuit have repeatedly addressed the First Amendment rights of public employees. *See, e.g.*, *Lane v. Franks*, 134 S. Ct. 2369 (2014); *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). It is an area in which bright lines are rare if not nonexistent. As *Brannon* makes clear, qualified immunity ordinarily protects a public official against an employee's First Amendment retaliation claim; only rarely is the law so clearly established that an official can be held liable. Here, though, the record would support a finding that Mr. Seltz deliberately denied an employee a coveted position because the employee reported Mr. Seltz's perjury and campaign of false charges to the State Attorney. If that is what happened, it was a clear violation of the First Amendment. *See Walker v. Schwalbe*, 112 F.3d 1127, 1133 (11th Cir. 1997) (denying qualified immunity to an official who demoted an employee for reporting violations of law to state legislators); *Chrzanowski v. Bianchi*, 725 F.3d 734, 742-43 (11th Cir. 2013) (denying qualified immunity to an official who fired an employee for reporting that the official had dishonestly handled prosecutions).

# VIII

There are two additional reasons to deny a stay pending appeal.

First, Mr. Seltz chose to delay submission of the qualified-immunity issue to the last minute. He could have moved to dismiss or for summary-judgment months ago. If he really asserts qualified-immunity turns on whether the law was clearly established—not on nonappealable differences over the facts supported by this record—there was no reason to wait. A defendant ought not be able to wait until the eve of trial, after the court and adverse party have devoted resources to trial preparation and are ready to go forward, to file an appeal and seek a stay.

Second, putting the case off will frustrate, not further, the policies protected by qualified immunity. If the trial is delayed, Mr. Seltz will be involved for a longer period; he will not be out of the case sooner. Moreover, Mr. Seltz is represented by the same attorney who represents the County. It is not a basis for this order, but it perhaps bears noting, that Mr. Seltz is probably being defended, and may ultimately be indemnified, by the same insurer or fund that is defending and will indemnify the County if it loses the case.

It is a curious system that brings issues like this to the court of appeals on hypothetical facts—facts a jury *could* find but often will not. Far better to address important constitutional issues on the actual facts. Still, curious or not, it is the

system we have.  Even so, a defendant ought not be able to manipulate the system by waiting until the last minute to raise the qualified-immunity issue.  If given a chance, we will know the actual facts a week from today.  A stay will serve the interests of nobody.

IX

For these reasons,

IT IS ORDERED:

The motion to stay, ECF No. 60, is denied.

SO ORDERED on October 21, 2015.

s/Robert L. Hinkle
United States District Judge